**MORGAN STANLEY DEAN WITTER REYNOLDS, INC.,**
**Plaintiff/Petitioner**

v.

**Peter N. GEKAS and Veronica P.Gekas, Defendants/Respondents.**

**No. 1:03–CV–1260.**

United States District Court, M.D. Pennsylvania.

March 15, 2004.

---

David R. Fine, Jacqueline E. Jackson–DeGarcia, Kirkpatrick & Lockhart, LLP, Harrisburg, PA, for Plaintiff.

Joseph M. Melillo, Angino & Rovner P.C., Harrisburg, PA, Defendants.

## MEMORANDUM AND ORDER

JONES, District Judge.

Currently pending before this Court is Plaintiff/Petitioner's Motion for an Order Compelling Arbitration and for a Prelimi-

nary Injunction. For the reasons discussed below, we will deny Defendants' motion and dismiss the proceedings in this Court.

## PROCEDURAL HISTORY

Defendants/Respondents Peter and Veronica Gekas ("Gekases" or "Federal Defendants") filed a writ of summons on February 1, 2002, and a complaint on January 31, 2003, in the Court of Common Pleas of York County, Pennsylvania ("State–Court Action"), against Morgan Stanley Dean Witter Reynolds, Inc. ("Morgan Stanley" or "Federal Plaintiff"), a Delaware Corporation with its principal place of business in New York; Dean Witter Reynolds Commodity Partners ("Commodity Partners"), a York County-based company that serves as a local office of Morgan Stanley, and Richard Wolf ("Wolf" or "Broker"), a securities broker formerly employed by Commodity Partners, (collectively "State–Court Defendants").

In June 1999, the Gekases opened a joint account with Morgan Stanley and Commodity Partners, with Richard Wolf serving as their broker.[1] They allege that Wolf made inappropriate investments on their behalf and that he "churned" their account to increase his commissions.

 The Gekases asserted claims of negligence, breach of contract, breach of covenant of good faith and fair dealing, misrepresentation, and violations of the Pennsylvania Securities Act, 70 P.S. §§ 1–401 through 1–404, and § 1–501, and the Pennsylvania Unfair Trade Practices Consumer Protection Law ("UTPCPL"), 72 P.S. §§ 201–1 through 201–3. The State–

---

1. The Gekases claim that they initially invested approximately $130,000, derived from proceeds from a home mortgage and a life insurance policy, and later invested an additional $46,517 in May 2000, totaling $176,517. They also claim that, due in part to the actions of their broker, their account suffered a total decline in capital in the amount of $109,666, and that the commissions, charges, and margin interest paid to the State–Court Defendants from the account totaled $89,097. If these calculations are accurate, they would result in a negative account balance of approximately $22,000.

Court Defendants filed preliminary objections on March 13, 2003 that included a motion to compel arbitration, asserting that all of the Gekases' claims were subject to arbitration under the terms of the contract. The Gekases filed their opposition to the preliminary objections on April 1, 2003.

On July 28, 2003, Morgan Stanley filed the above captioned case in the U.S. District Court, Middle District of Pennsylvania, seeking an order to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 4 ("FAA"),[2] and to enjoin the pending State–Court Action initiated by the Gekases.[3] Quite clearly, Morgan Stanley could not remove the State–Court Action to federal court because complete diversity of citizenship between the Gekases and the other State–Court Defendants was lacking under 28 U.S.C. § 1332, and because the FAA does not provide an independent basis for federal subject matter jurisdiction. *See Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 25 n. 32, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ("Section 4 provides for an order compelling arbitration only when the federal district court would have jurisdiction over a suit on the underlying dispute; hence, there must be diversity of citizenship or some other independent basis for federal jurisdiction before the order can issue."). *See also, Southland Corp. v. Keating,* 465 U.S. 1, 15 n. 9, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984) ("While the Federal Arbitration Act creates federal substantive law requiring the parties to honor arbitration agreements, it does not create any independent federal-question jurisdiction under 28 U.S.C. § 1331 or otherwise"); *Brown v. Monahan,* No. 97–7245, 1997 WL 773095, *2, 1997 U.S. Dist. LEXIS 19793, *5–*6 (E.D.Pa.1997) (Section 4 of the FAA does not confer federal question jurisdiction).

Within a few days of the filing of the instant suit, on August 2, 2003, President Judge John H. Chronister of the Court of Common Pleas of York County issued an opinion directing counsel for both parties to develop a factual record to assist the court in deciding the State–Court Defendants' pending Motion to Compel Arbitration. The court also directed counsel to re-list the matter with the court once the factual record had been developed, and denied the State–Court Defendants' request for a stay as premature, due the pendency of their federal petition. The parties, following the suggestion of the court, voluntarily stayed the State–Court Action to allow this Court to decide the jurisdictional questions before us.

The jurisdictional issues have been briefed by both parties and are ripe for disposition.

## DISCUSSION

Federal Defendants contend that we lack jurisdiction in this case because the absent State–Court Defendants are indispensable parties under Fed.R.Civ.P. 19.

---

**2.** 9 U.S.C. § 4 provides:

A party aggrieved by the alleged failure, neglect or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such an agreement.... The court shall hear the parties, and upon being satisfied of the making of the agreement for arbitration or the failure to comply therewith is not is issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

**3.** Morgan Stanley filed an Amended Complaint and Petition on August 11, 2003 (doc. 7).

Alternatively, they argue that we should abstain from exercising jurisdiction based on "considerations of wise judicial administration,"[4] as adequate and complete relief is available in the pending State–Court Action. If we determine that it is appropriate for us to abstain in this case, we need not consider whether the absent State–Court Defendants are indispensable parties necessitating their joinder.[5]

Federal Plaintiff asks this Court to 1) compel Federal Defendants to arbitrate all of their claims and 2) enjoin Federal Defendants' pending State–Court Action. We will address these motions in order.

### Abstention In the Context of Parallel, Duplicative Litigation

 The first question we must address is whether we should abstain from exercising jurisdiction due to the pending State–Court Action. Our determination is controlled by United States Supreme Court precedent articulated in *Colorado River Water Conservation District v.* *United States,*[6] and *Moses H. Cone Memorial Hospital v. Mercury Construction Co.*[7] Under *Colorado River,* a federal district court may dismiss a duplicative federal case in favor of a pending state action based on considerations of "wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) (citation omitted). According to the Supreme Court, however, a district court may abstain from the exercise of jurisdiction only under "exceptional circumstances," and it identified four factors to be considered in such cases: 1)whether the state court has assumed jurisdiction over any res or property; 2) the relative convenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; and 4) the order in which the state and federal forums obtained jurisdiction. *Id.* at 818, 96 S.Ct. 1236. The Court stressed that the decision to dismiss should be

**4.** *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**5.** For the purposes of this Order, we will assume that the absent State Court Defendants, Commodity Partners and Wolf, are not indispensable parties to this action, and thus we would have jurisdiction pursuant to 28 U.S.C. § 1331. We note that Federal Plaintiff argues that, even though the absent State–Court Defendants are not parties to the arbitration agreement before us, this Court is able to grant complete relief because the scope of any arbitration under the agreement is broad and would include claims against affiliates and agents of Morgan Stanley, and it can adequately represent their interests. Thus, Federal Plaintiff claims that the absent parties are not only *not* indispensable under FRCP 19(b), they also do not meet the definition of "necessary party" under FRCP 19(a). (Pl./ Pet. Reply to Def./Resp. Juris. Br. at 3–5.) Further, Federal Plaintiff claims that Rule 19(b) does not require the joinder of both principal and agent is cases asserting vicarious liability, and that the absent State Court

Defendants are not parties to the arbitration agreement and thus are not indispensable.

Alternatively, Federal Defendants are potentially prejudiced within the meaning of Rule 19(b) if they are forced to litigate this matter in state court against Commodity Partners and Wolf, and in federal court against Morgan Stanley. In addition, Commodity Partners and Wolf may suffer prejudice if they are forced to defend themselves in state court without the support of Morgan Stanley. Since both the state court and this Court would be interpreting the same arbitration agreement, there is the potential for the parties to be subjected to conflicting legal obligations.

Ultimately, we believe the issue of indispensability is difficult to decide based on the incomplete record before us, and therefore have chosen to decide the motions on other grounds.

**6.** 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976).

**7.** 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

based on a careful balancing of these factors, and noted that a district court may give different weight to each factor in its determination. Id. at 818–19, 96 S.Ct. 1236 ("No one factor is determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise· is required."). *See also Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927 (Colorado River factors to be applied "in a pragmatic, flexible manner with a view to the realities of the case at hand."). In weighing these factors, we are forever mindful of the Court's admonition that we have a "virtually unflagging obligation" to exercise our jurisdiction. 424 U.S. at 817, 96 S.Ct. 1236 (citation omitted).

■ The case at bar does not involve real property. Thus, because this is a matter in personam rather than in rem, *Colorado River's* first factor does not apply. The second *Colorado River* factor, relative convenience of the federal forum, is not a significant issue in this case. To the extent that it is a factor, it weighs against abstention. Convenience under *Colorado River* refers to geographic location. 424 U.S. at 820, 96 S.Ct. 1236 (finding that three-hundred mile distance between state and federal courts weighs in favor of abstention). The State–Court Action is pending in York County, Pennsylvania. This Court is located in Williamsport, Pennsylvania, approximately two hours north of York County. The Federal Defendants live in Cumberland County, Pennsylvania. As Federal Plaintiff is located in New York and it could have opted to file its motions in a federal district court in that jurisdiction, which clearly would have been more convenient for it.[8] Never-

theless, because the state court and this Court, as well as the Federal Defendants, are located in Central Pennsylvania, we find this Court to be relatively convenient to all the parties.

The third factor articulated by the Supreme Court in *Colorado River*, the desirability of avoiding piecemeal litigation, requires a more detailed examination and analysis. Federal Plaintiff argues that the scope of the arbitration provision at issue is broad and that the entire dispute should be directed to arbitration, thus avoiding piecemeal litigation. Federal Defendants counter that their broker, Wolf, and Commodity Partners, his local supervisors, are not covered by the arbitration clause. Because they allege that their state law claims depend largely on the theory of respondeat superior, and that the causes of action Morgan Stanley seeks to arbitrate cannot proceed without the employee/agent parties, Federal Defendants argue that, if we rule on Federal Plaintiff's Motion to Compel Arbitration, there are at least two potential outcomes. (Def./Resp. Mem. Juris. At 5.) In one scenario, if we decide that the arbitration clause is not valid, the absent State–Court Defendants could argue that they are not bound by the result because they are not parties to this proceeding. Alternatively, if we decide that Federal Plaintiff is entitled to arbitration, then it could seek an order from the State–Court that the absent State–Court Defendants were also entitled to arbitration.

At this juncture, we do not know the position of the absent State–Court Defendants as to this federal action. Although it appears that all of the State–Court Defendants sought an arbitration order in state

8. We note that the disputed arbitration clause, if found to be valid and enforceable, requires that "[t]he law of the State of New York will apply in all respects, including but

not limited to determination of applicable statutes of limitation and available remedies." (Am. Compl. of Pl./Pet. at Ex. C.)

court, and although it may be plausible to believe that Commodity Partners and Wolf would be willing to be represented by Morgan Stanley pursuant to a federal order to arbitrate, there is no way of knowing if this is the case because they are not parties to the action before us. Morgan Stanley is asking this Court to rule, without benefit of the proper development of the record, that its interpretation of the arbitration clause is correct. Accordingly, we find that the possibility of piecemeal litigation, and the danger of prejudice to the absent State–Court Defendants as a result, weighs in favor of abstention.[9]

The fourth *Colorado River* factor clearly favors abstention. As previously noted, Federal Defendants filed a writ of summons on February 1, 2002, and a complaint on January 31, 2003, in the Court of Common Pleas of York County, Pennsylvania. The State–Court Defendants, which include Federal Plaintiff Morgan Stanley, filed preliminary objections on March 13, 2003, asserting that all of Plaintiffs' claims were subject to arbitration under the terms of the contract. Almost exactly six months after the filing of the Gekases complaint, and a year and six months after being notified of their intent to sue, Morgan Stanley filed this federal action. Less than a week later, the state court, in its August 3, 2003 opinion, asked the parties to further develop and submit a factual record, in lieu of a hearing, from which it could make a determination as to the validity of the disputed arbitration clause. Federal Plaintiff delayed their pursuit of a federal forum while the state court considered the submissions of the parties regarding the very same request for compelled arbitration. Such a lengthy delay frustrates efficiency concerns and weighs in favor of abstention. *Cf. Moses H. Cone*, 460 U.S. at 21, 103 S.Ct. 927 (nineteen day delay in filing federal action immaterial given the lack of progress of the state action in relation to the substantial progress of the federal court case); *Paine-Webber, Inc. v. Cohen*, 276 F.3d 197, 208 (6th Cir.2001) (two days constitutes insignificant delay).

In addition, Federal Plaintiff's actions raise the specter of impermissible forum shopping. We recognize that in *Moses H. Cone*, the Supreme Court reserved ruling on whether a party's reactive litigation tactics (in this case Morgan Stanley's), are relevant to the decision to abstain.[10] However, the Court also stated that "[t]he reasoning of the Court of Appeals in this case . . . that the vexatious or reactive nature of either the federal or the state litigation may influence the decision whether to de-

---

9. In *Moses H. Cone*, the Supreme Court noted that in its *Colorado River* decision, this factor was "by far the most important [ ] in our decision to approve dismissal. . . ." The Court then distinguished the case before it on the grounds that the Plaintiff had two substantive disputes with two separate parties, having an arbitration agreement with only one of those parties. Thus, the Court found no danger of piecemeal litigation because the arbitrability issue was "easily severable from the merits of the underlying dispute." *Id.* at 21, 103 S.Ct. 927.

In the case before us, one issue for a court deciding the motion to compel is whether Commodity Partners and Wolf are covered by the arbitration clause, and to what extent. In addition, the Gekases substantive claims of fraud on the part of their broker in his performance under the contract also bears on the issue of the validity of the arbitration agreement itself. It appears to us that the arbitrability issue is intertwined to some extent with the merits of the underlying dispute and therefore is not easily severable.

10. Jean R. Sternlight, *Forum Shopping for Arbitration Decisions: Federal Courts' Use of Antisuit Injunctions Against State Courts*, 147 U. Pa.L.Rev. 91, 182 (1998). The author's thoughtful, comprehensive and well-reasoned article was of great assistance to this Court as we examined the issues raised by the parties in the instant action.

fer to a parallel state litigation under Colorado River-has considerable merit." *Moses H. Cone*, 460 U.S. at 17 n. 20, 103 S.Ct. 927. We agree, and find that Morgan Stanley's delay in filing their motion with this Court, coupled with the fact that the state court was already considering what must be an identical motion to compel, provides a strong basis for abstention.

■ In *Moses H. Cone*, the Court again stressed the need for the existence of exceptional circumstances in order for a federal court to abstain, and articulated additional factors for a court to consider in deciding whether to abstain when there is pending parallel state litigation. These factors are: whether federal or state law provides the rule of decision; the relative progress of the concurrent actions (a refinement of the fourth factor in *Colorado River*); and the adequacy of the state forum. 460 U.S. 1, 22–27, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

The *Moses H. Cone* Court held that the presence of a federal question should weigh against abstention. *Id.* at 25, 103 S.Ct. 927. *Moses H. Cone* itself was a federal diversity action for a declaratory judgment compelling arbitration under the FAA. In it the Court found the question of arbitrability to be one of federal law. *Id.* at 24, 103 S.Ct. 927. However, subsequent Supreme Court decisions have held that state law may provide the rule of decision in certain circumstances. For example, "[w]here the party challenging arbitration is raising a contractual defense such as waiver, unconscionability, or fraud, the Court has now specified that state law shall guide the decision." [11] In the case at

bar, Federal Defendants have made allegations of fraud and related claims. In addition, the Supreme Court has held that "[w]hen deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally ... should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995). Nevertheless, whether a court should apply state or federal substantive law when determining whether the parties agreed to arbitrate is an unsettled issue in the Third Circuit. *Compare Spinetti v. Serv. Corp. Int'l*, 324 F.3d 212, 214 (3d Cir.2003) (citing *First Options*, 514 U.S. at 944, 115 S.Ct. 1920) ("The federal policy encouraging recourse to arbitration requires federal courts to look first to the relevant state law of contracts [ ] in deciding whether an arbitration agreement is valid under the FAA") *with Medtronic Ave., Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F.3d 44, 54 (3d Cir.2001) (citing *First Options*, 514 U.S. at 943, 115 S.Ct. 1920) ("[I]f the Arbitration Act applies, federal law, including general principles of contract law, determines whether there is a valid arbitration clause."). We find that the fact that Federal Defendants are challenging the enforceability of the arbitration clause on state law grounds provides significant support for abstention in this case.[12]

The relative progress of this litigation in the state court and in this Court also weighs in favor of abstention. The State–Court Action was initiated over two years ago. President Judge Chronister has re-

---

**11.** Sternlight, 147 U.Pa.L.Rev. at 185 (citing *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)).

**12.** The Supreme Court interpreted section 2 of the FAA as declaring that "state law may

be applied 'if that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" *Doctor's Assocs.*, 517 U.S. at 686–87, 116 S.Ct. 1652.

viewed the submissions of the parties, begun consideration of the State–Court Defendants' request for enforcement of the arbitration agreement, and issued an opinion requesting further development of the factual record by the parties through discovery methods such as depositions and interrogatories. The parties have voluntarily stayed development and submission of this record so that this Court could determine if we have, and will exercise, jurisdiction. Federal Plaintiff has filed with this Court its Amended Complaint and Petition to Compel Arbitration (doc. 7), with a detailed Brief in Support (doc. 3) arguing for the validity of the arbitration clause. The Gekases have filed an Answer to the Amended Complaint (doc. 12) and a Memorandum on Jurisdictional Issue (doc. 9), which focuses on the issues we now consider, abstention and joinder, but does not argue specifically the reasons that the arbitration clause is not enforceable, except to assert that Pennsylvania law controls the issue. Therefore, we would require further briefing of this issue, in the form of a Federal Defendants' Brief in Opposition and a Federal Plaintiff's Reply Brief, in addition to any development of the factual record we might order pursuant to the FAA, 9 U.S.C. § 4. Clearly the state court is not only in a better position to make a prompt ruling as to the issue of arbitration, but has in fact indicated its willingness to do so. (Op. of P.J. Chronister at 2.)

The *Moses H. Cone* Court also considered the adequacy of the state forum to be an important factor, specifically its ability to decide motions to compel arbitra-

tion. Although the Court rested its decision not to abstain in part on the ground that a state court might not have authority to grant such motions, subsequent Supreme Court precedent has held that state courts must enforce the FAA to the same extent as federal courts. The main purpose of the FAA is to ensure that private agreements to arbitrate are enforced according to their terms. *Volt Information Sciences, Inc. v. Board of Trustees*, 489 U.S. 468, 471, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989). It is applicable in both federal and state courts if the contract is one involving interstate commerce, *Southland Corp.*, 465 U.S. at 11, 104 S.Ct. 852, and "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[13] Under this principle, the York County Court of Common Pleas is clearly an adequate forum for determination of the validity of the arbitration clause. As previously noted, by its own opinion that court stated that it is willing and able to decide the issue. (Op. of P.J. Chronister at 2–3.) Further, we agree with the *Spinetti* court's interpretation of *First Options*, and thus a court deciding the arbitrability issue in this case should apply Pennsylvania law. Finally and importantly, all of the parties to this dispute are currently before the state court, while only two of the parties are before this Court. For these reasons, we feel the state forum is superior, if not merely adequate, for it can comprehensively dispose of the litigation. Without the absent State–Court Defendants before us, we can only speculate that we will be able

13. Noting that the Supreme Court has· reserved ruling whether Sections 3 and 4 of the FAA (impose requirements on federal courts relating to staying litigation and compelling arbitration), apply in state court, Professor Sternlight asserts that "section 2 and its emanations, impose on state courts duties that are indistinguishable from those imposed by sec-

tions 3 and 4 of the FAA.... Because section 2 requires state courts to enforce parties' agreements to arbitrate, state courts must grant motions to compel arbitration and also stay proceedings that regard issues referable to arbitration." 147 U.Pa.L.Rev. at 111 n. 95 (citations omitted).

to provide a comprehensive disposition of all of the issues. This we decline to do. Therefore, we find that these factors provide "exceptional circumstances" counseling in favor of abstention.

Finally, recognizing that the abstention factors under *Colorado River* and its progeny are not a mere checklist and are to be approached pragmatically, we believe abstention is appropriate in this case. To reiterate, the state action was initiated a year and six months prior to this federal case, Pennsylvania law will provide the rule of decision, the Court of Common Pleas for York County is a more than adequate forum and it has all of the relevant parties before it. In addition, it is evident to us that Morgan Stanley filed this suit, which is clearly reactive, because it was prohibited from removing the State-Court Action under 28 U.S.C. § 1331. It is safe for us to surmise that Morgan Stanley concluded, after protracted litigation at the state court level, that a federal district court might prove to be a more favorable forum for its claims. However, it is unnecessary for us, at this late juncture, to take jurisdiction of the Federal Plaintiff's Motion to Compel Arbitration when 1) the state court, which has concurrent jurisdiction over the matter, is fully capable of deciding it, and 2) whichever court decides these issues must apply the same substantive law in making its decision. We have, as federal courts must, conducted a fact-specific inquiry to determine if there exists a clear justification to surrender our jurisdiction. For the compelling reasons discussed at length above, we will abstain from exercising our jurisdiction in favor of the Court of Common Pleas of York County.

As to Federal Plaintiff's Motion for Preliminary Injunction, because we have decided not to exercise jurisdiction over their claims, this motion is moot.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1. Federal Plaintiff's Motion for an Order Compelling Arbitration and for a Preliminary Injunction (doc. 1) is DENIED.

■■■ 2. The case is dismissed with prejudice.[14]

3. The clerk shall close the file on this case.

---

**14.** According to the principles of *Colorado River* abstention, an abstaining federal district court has the option of staying the action before it or dismissing it altogether. *Moses H. Cone*, 460 U.S. at 13–16, 103 S.Ct. 927. We are confident that the state court decision on the motion to compel arbitration, as well as its decision on claims asserted by the Gekases if it denies the motion, will have preclusive effect in any subsequent federal proceeding, and thus have opted for dismissal. *See Wilton v. Seven Falls Co.,* 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).