In opposing Defendants' motions to dismiss under the Rooker - Feldman doctrine, Plaintiffs argue that the instant action does not satisfy its requisites because (1) the Lycoming County Court's August 2016 dismissal of their GMRA-related claims did not render them state court losers, and (2) the injury they sustained was not caused by the state court decision but rather the actions of Defendant Lancaster.[60] Because I am in agreement that the injury sustained by Plaintiffs was not caused by the August 2016 dismissal of this GMRA-related state claims, and in fact pre-dated that ruling, this federal suit is necessarily outside the ambit of the Rooker - Feldman doctrine.
In Exxon Mobil, the Supreme Court emphasized that Rooker - Feldman is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[61] Here, Plaintiffs specifically complain of injury inflicted by the 2016 Declarations of Interest filed following the Lycoming County Court's dismissal of their GMRA-related claims, and therefore argue that this injury was not caused by this decision.[62] Defendants counter by arguing that the filing of these Declarations was in fact spurred by that state court decision, and that this action therefore satisfies the requisites of Rooker - Feldman .[63] While I am cognizant of, and will separately address Defendants' essential argument that this action closely parallels and implicates the claims, issues, and conclusions of the state court, I nevertheless find this connection insufficient to satisfy factors two and four of the Rooker - Feldman doctrine.
First, even if the Court were to accept Defendants' averment that the 2016 Declarations of Interest were spurred by the Lycoming County Court's August 2016 dismissal of the GMRA-related claims, this argument does not tell the complete, and complicated, background of this litigation. These 2016 Declarations on Interest, even if cloaked as somehow independent from the previously executed Lease Agreement, stem from the same royalty provision and *676 effect the same injury-cloud on Plaintiffs' title. Therefore, while I accept that the Declarations may have been filed in response to the state court decision, the injury alleged to be created by this cloud was pre-existing given the existence of the yet-to-be-invalidated Lease Agreement. A causal connection can therefore not be made between the ultimate injury and this state court decision.
Second, Defendants' argument that this matter should be dismissed simply because the Court would in the course of this litigation be required to reject the Lycoming County Court's legal conclusions on Plaintiffs GMRA-related claims is similarly unavailing.[64] Here's why. In the Exxon Mobil decision, the Supreme Court wrote, on this very point, that "neither Rooker nor Feldman supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains sub judice in a federal court."[65] Rather, "[i]f a federal plaintiff 'present[s] some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party..., then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion.' "[66] Here, the Plaintiffs' quiet title claim, based ostensibly on the filing of the 2016 Declarations of Interests, may implicate the negation of a legal conclusion reached by the Lycoming County Court. Pursuant to the direction of the Supreme Court, however, this issue is more properly analyzed under preclusion principles.
2. Whether the Quiet Title Claim is Barred by Res Judicata
Having found that this Court's jurisdiction is not barred under the Rooker - Feldman doctrine, but nevertheless cognizant of Defendants' arguments concerning the common issues presented by these suits, I will now address whether Plaintiffs' quiet title claim is barred by res judicata .[67] Generally, res judicata encompasses two preclusion concepts: (1) issue preclusion, a more narrow application of traditional res judicata that forecloses litigation of a litigated and decided matter (often referred to as collateral estoppel); and (2) claim preclusion, which disallows litigation of claims that have either been litigated or were never litigated, but which should have been presented in an earlier suit.[68] Common to both of these encompassed doctrines is the requirement that the previous suit culminate in a judgment on the merits.[69] Plaintiffs argue that this *677 element is lacking and both doctrines are therefore inapplicable.[70] I agree.
As noted above, the procedural history of the Lycoming County Court action demonstrates that, following the issue of judgment on the pleadings to Defendants Lancaster and SWN on Plaintiffs' GMRA-related claims, the Superior Court reversed the Lycoming County Court's conclusion that the PHT/Lancaster Lease Agreement did not violate the GMRA, but remanded to the Court to adjudicate on other grounds raised by the various motions and preliminary objections.[71]
On remand, the Lycoming County Court dismissed Plaintiffs' GMRA-related claims as barred because the joinder of necessary parties could not be effectuated without running afoul of the statute of limitations.[72] This dismissal is not, however, a final adjudication on the merits. Indeed, a merits adjudication is one made on substantive law, rather than procedural rules.[73] Dismissal made pursuant to the statute of limitations, as in the state action, is the latter.[74] That ruling therefore has no preclusive effect here.
3. Whether this Court Should Abstain from Exercising Jurisdiction Over this Action Under the Brillhart or Colorado River Abstention Doctrines.
Coloring this dispute is the substantial overlap between the claims and issues of this federal action and those in dispute in the Lycoming County Court action. Based on this overlap, Defendants argue that, if this Court were to determine that the Rooker - Feldman doctrine and preclusion principles were inapplicable, it should nevertheless abstain from exercising its jurisdiction over this matter under either the Brillhart or Colorado River abstention doctrines.[75] I will examine the applicability of these doctrines below.
a. Brillhart Abstention
Defendants first argue that, because the relief sought by Plaintiffs is essentially declaratory in nature, this Court should abstain from exercising jurisdiction pursuant to the discretion first enunciated by the Supreme Court in Brillhart v. Excess Ins. Co. of America ,[76] and reiterated in Wilton v. Seven Falls Co.[77] [78] Under this discretion, a federal court may decline to exercise jurisdiction properly afforded under the Declaratory Judgment Act[79] when an action seeks declaratory relief.[80] This discretion to decline jurisdiction *678 is guided by the factors outlined by the Third Circuit in Reifer v. Westport Insurance Corporation.[81] While cabined, this discretion also exists when both declaratory and legal relief are sought.[82]
Here, Defendants argue that, while styled as a quiet title claim, the relief sought is declaratory in nature and this Court should therefore abstain from exercising jurisdiction pursuant to Brillhart . In my view, Brillhart and its progeny are inapposite to the instant scenario. Indeed, examination of the analytical basis of Brillhart abstention reveals that it is derived from the permissive language of the Declaratory Judgment Act and therefore applies only when this jurisdiction is premised on this federal act.[83] Therefore, although I recognize Defendants' argument that Plaintiff's legal claim essentially requests declaratory relief, the absence of an actual claim under the Declaratory Judgment Act is dispositive on this issue. Abstention under Brillhart is therefore inapplicable.
b. Colorado River Abstention
Defendants next argue that abstention is appropriate under the Colorado River doctrine because the action within the Lycoming County Court and this federal action are parallel proceedings which demonstrate "extraordinary circumstances" justifying abstention.[84] I disagree.
Federal courts have a "virtually unflagging obligation to exercise the jurisdiction given them."[85] The Colorado River doctrine, however, permits courts to abstain from exercising jurisdiction by staying or dismissing a pending federal action in favor of a parallel state court proceeding.[86] This abstention is based on "principles of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.' "[87] Pursuant to a directive by the Supreme Court, lower federal courts must however apply this doctrine cautiously and be mindful that abstention is an "extraordinary and narrow exception."[88] The abstention analysis comprises a two-part inquiry: the court must decide first whether the actions are *679 indeed "parallel" and, second, whether the matters present the "extraordinary circumstances" contemplated by Colorado River and its progeny.[89]
As noted, the first step in determining whether Colorado River abstention is appropriate is to determine if there exists a parallel state court proceeding.[90] Generally, proceedings are "parallel" when they "involve the same parties and substantially identical claims, raising nearly identical allegations and issues."[91] In reaching this issue, the Third Circuit has noted that "it is important.... that only truly duplicative proceedings be avoided. When the claims, parties or requested relief differ, deference may not be appropriate."[92] Defendants argue that this action and the state proceeding are parallel because the parties are the same in both actions and the state action involved a now dismissed quiet title claim.[93] Plaintiffs, in turn, respond that the ongoing state court proceeding is not parallel because it no longer addresses their GMRA-related claim.[94] This argument, presumably premised on the Lycoming County Court's August 2016 dismissal of GMRA-related claims, ignores the potential that this dismissal may be revisited and potentially reversed on appeal. The current absence of this issue in the state proceeding therefore is not sufficient so as to find that it is also not a parallel proceeding under Colorado River .
Once proceedings are deemed to be parallel, a court shall then consider "whether 'extraordinary circumstances' meriting abstention are present."[95] This determination requires consideration of the following factors:
(1) Which court first assumed jurisdiction over property involved, if any;
(2) Whether the federal forum is inconvenient;
(3) The desirability of avoiding piecemeal litigation;
(4) The order in which the respective courts obtained jurisdiction;
(5) Whether federal or state law applies; and (6) Whether the state court proceeding would adequately protect the federal plaintiff's rights.[96]
None of these factors are determinative; rather, they require "a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction."[97]
Here, the first three Colorado River factors are neutral. The Third Circuit has described the first factor as whether either court has obtained jurisdiction over property in the matter.[98] Here, neither the state nor the instant proceeding *680 is in rem and the Court therefore finds this factor to be neutral. The second factor refers to the federal forum's geographic location in relation to the state court location.[99] Given the close proximity of the federal courthouse in this division of the District Court to the Lycoming County Courthouse, this factor in the Colorado River analysis is similarly neutral. The third factor-the desirability of avoiding piecemeal litigation-weighs against abstention in this matter, as well. In assessing this factor, a court must examine whether a statute, regulation, or authority at issue evinces a policy of avoiding piecemeal litigation in this context.[100] Here, the parties are essentially in agreement that no such policy exists.[101]
Factor four-the order in which the respective courts obtained jurisdiction-weighs in favor of abstention. In reaching this determination, I note that the Third Circuit has cautioned that we must consider not only "which action was filed first," but also "[t]he comparative progress made in the state cases and this one also needs to be considered."[102] Here, litigation has been pending in the Lycoming County Court since 2011. That litigation has encompassed an appeal to the Superior Court, and now includes a planned trial from May 2018 through June 2018. By contrast, litigation in this Court commenced in 2017, and this instant Memorandum Opinion is this Court's first foray into the merits of this action. The nascent procedural posture of this litigation, as compared to the state proceeding, augurs in favor of abstention.
The fifth element-whether federal or state law applies-is neutral. Indeed, while state law unquestionably controls here, abstention cannot be justified on that fact alone.[103] I specifically note that, while the presence of federal issues often weighs against abstention, federal jurisdiction here is invoked under the diversity statute which requires federal courts to routinely interpret issues entirely within the realm of state law. Therefore, this factor, based on properly pled diversity jurisdiction, is neutral. Finally, the sixth factor-whether the state court proceeding would adequately protect the federal plaintiff's rights-actually weighs against abstention. Here, the Lycoming County Court dismissed Plaintiff's GMRA-related claims on procedural grounds. The action in this Court is therefore necessary to protect Plaintiffs' interests and reach a decision on the merits of these claims. In sum, on balance, and upon consideration of the above Colorado River factors, I find that "exceptional circumstances" are not presented by this litigation.[104] Abstention in deference to the state court proceeding is therefore not warranted.
4. Whether Plaintiffs' Quiet Title Claim is Time Barred.
Finally, Defendants move to dismiss Plaintiffs' claim as barred because they argue that it accrued in 2005-a date which places it well beyond both Pennsylvania's four-year statute of limitations for *681 breach of contract actions and a six-year catchall statute of limitations.[105] Plaintiffs respond that dismissal is inappropriate because this action, styled as a quiet title claim, by its nature evades any time bar.[106] Plaintiffs are correct.
First, I note that Federal Rule of Civil Procedure 8(c) classifies a statute of limitations claim as an affirmative defense that must be pled in an answer to the complaint.[107] A court may nevertheless dismiss a complaint as time-barred under Rule 12(b)(6) if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations."[108] This so-called "Third Circuit Rule" is however only appropriate "where, on the face of the complaint, a court can determine that the claims contained in it are untimely."[109]
In the matter at hand, Plaintiffs' Complaint asserts a quiet title claim under Pennsylvania law. As such, Defendants' arguments concerning the applicability of a four year and six year statute of limitations are therefore inapposite. Under Pennsylvania law, an action to quiet title cannot be subject to a statute of limitations. Indeed, in Kean v. Forman , the Pennsylvania Superior Court, addressing a quiet title claim brought to remove a mortgage on the plaintiff's property, held that actions to quiet title "cannot be subject to a statute of limitations, since the possessor's interest in the property is clouded by the questioned mortgage each day that it remains."[110] Such is the case in this action. The Lease Agreement and related Declarations of Interest here, alleged to be invalid clouds concerning the royalty obligations between the parties, remain an encumbrance on the property each day they remain undisturbed.
Moreover, I note that the stated basis for this quiet title action, and the remedies sought by Plaintiffs through this action, specifically concern the 2016 Declaration of Interests filed by Defendants.[111] While I am cognizant of the related nature of these filings to the Lease Agreement (executed in 2005) and implications that an adverse finding by this Court would have on its validity, I nevertheless find that these filings constitute a new cloud on Plaintiffs' title which would, in any event, bring this action well into the four and six year limitations periods advanced by Defendants.[112] Defendants' arguments on this point are therefore dispelled, and their motion is denied.
B. Plaintiffs' Motion for Summary Judgment[113]
Given the inherently legal nature of this action and the undisputed material *682 record, Plaintiffs have also filed a Motion for Summary Judgment.[114] In this motion, Plaintiffs argue that summary judgment is appropriate as a matter of law because (1) no material facts remain in dispute, and (2) the Lease Agreement on its face violates the GMRA and must be removed from the title of the subject property.[115] Defendants in turn oppose the entry of summary judgment by arguing that (1) this claim remains time-barred,[116] (2) the Superior Court's decision in Forest Resources, LLC is non-binding and, in any event, is a misapplication of Pennsylvania contract law, and (3) disputed material facts preclude summary judgment on this issue.[117] Having reviewed the undisputed factual record of this case,[118] I find that Plaintiffs are entitled to judgment as a matter of law.
First, Defendants argue within their brief in opposition that Forest Resources, LLC is not binding because, while it reversed the issuance of judgment on the pleadings, the Superior Court thereafter remanded the case for consideration of other defenses raised, but not fully addressed, by the state trial court.[119] Regardless of whether this case is binding, however, its analysis and conclusions, wholly dispositive of the instant matter, are soundly reached and will be adopted here. I note, for instance, that Defendants' oppose summary judgment on the ground that Forest Resources, LLC incorrectly found the 2002 Lease and subsequent Letter Agreements to be treated as a single agreement.[120] In Camp Ne'er Too Late, LP v. Swepi, LP (" Camp Ne'er Too Late "), I opined on the applicability of Forest Resources, LLC and specifically summarized this case as follows:
Specifically, Southwestern Energy involved a dispute between an initial oil and gas lease and two subsequent letter agreements that explicitly amended certain terms of the original lease. In Southwestern Energy, the Honorable Sallie Updyke Mundy of the Superior Court of Pennsylvania made clear that "by their own terms," the agreements at issue "reference and incorporate each other with the clear intent they should be interpreted as a single agreement." Quite opposite from the facts at hand, one of the two subsequent lease amendments in Southwestern Energy even "identifie[d] itself as an amendment of *683 the [prior] [a]greement, not an independent collateral agreement."[121]
Defendants attempt, however, to argue that Forest Resources, LLC is an incorrect statement of law and cite the Camp Ne'er Too Late to support a contrary analytical approach. First, to the extent that Defendants offer Camp Ne'er Too Late as an opinion critical of the Forest Resources, LLC holding, I note that my analysis in that case simply served to distinguish Forest Resources, LLC from the presented facts.[122] It did not criticize the Superior Court's correct recitation and application of state contract law.[123] Nor could it given the wide acceptance which Pennsylvania courts have afforded its holding.[124]
Moreover, Forest Resources, LLC , in this Court's view, correctly decided the issues presented here. First, the Superior Court found that:
[B]ased on a plain reading of the documents themselves, that the recorded 2002 Lease, the 2002 Letter Agreement as amended by the 2005 Letter Agreement, and the 2005 Lease Extension must be construed together to interpret the terms of the lease agreement between PHT and Lancaster.[125]
The Court in Forest Resources, LLC based this finding in part on the opening lines of the 2005 Letter Agreement, which provides that it "amends and restates the agreement" between the Plaintiffs and Defendant Lancaster.[126] This Letter Agreement thereafter incorporated the 2002 Lease by reference, and provides a complete discussion of the consideration to be provided for the entire transaction-the reduction of the royalty interest to 6.25% by way of "assignment back" mechanism.[127] As noted by Plaintiffs, and confirmed by the inspection of this Court, this 2005 Letter Agreement concludes by stating that it represents "the full and complete understanding between the Lessor and Lessee."[128] Based on these averments, I am in agreement with the Superior Court that the 2002 Lease, 2002 Letter Agreement, 2005 Letter Agreement, and 2005 Lease Extension are properly interpreted as one agreement.
Furthermore, I find that Forest Resources, LLC is correct in finding that this Lease Agreement, interpreted as one document, is in violation of the GMRA. The applicable language of this particular statute reads:
A lease or other such agreement conveying the right to remove or recover oil, natural gas or gas of any other designation from lessor to lessee shall not be valid if such lease does not guarantee the lessor at least one-eighth royalty of all oil, natural gas or gas of other designations removed or recovered from the subject real property.[129]
Here, the 2005 Letter Agreement, which reduces the royalty provision from 12.5%, or a 1/8th share, to 6.25%, of a 1/16th share, runs afoul of this provision. Indeed, like the Superior Court in Forest Resources, LLC , I find that plain language of the GMRA compels this result.[130] As included *684 above, this language dictates that a document "shall not be valid" if it does not guarantee the lessor a 1/8th royalty. While masked as a 50% assignment back to Defendants of the previously ordained 1/8th royalty, this mechanism, as created by the 2005 Letter Agreement modifying the terms of the Lease Agreement, clearly violates this directive. Argument to the contrary by Defendants is in contravention of the GMRA's clear mandate and is unpersuasive.[131] Furthermore, I am in agreement with Plaintiffs and the Superior Court that to accept this practice in this and all future leases would allow complete circumvention of the statute and effectively render it without consequence.[132]
For these reasons, I find that Forest Resources, LLC , even if not binding on this Court, is highly persuasive and its reasoning and holding will be adopted in toto . Plaintiffs are therefore entitled to summary judgment on their quiet title claim as the Lease Agreement at issue is invalid.[133]
IV. CONCLUSION
Based on the above reasoning, I find that Defendants Lancaster Exploration and Development Company, LLC, SWN Production Company, LLC, and Chief Oil & Gas, LLC, Chief Exploration and Development, LLC, Radler 2000 L.P., Tug Hill Marcellus, LLC, and Enerplus Resources (USA) Corporations' Motions to Dismiss will be denied in all respects.
Furthermore, because I find that no genuine dispute of material fact remains as to the validity of the Lease Agreement at issue in this case, Plaintiffs' Motion for Summary Judgment will be granted as a matter of law.
An appropriate Order follows.

See ECF No. 26, at 4-8.

Exxon Mobil Corp. , 544 U.S. at 284, 125 S.Ct. 1517.

Compl. (ECF No. 1) ¶¶ 33-35.

See, e.g, ECF No. 29, at 8-10.

ECF No. 29, at 10.

Id. at 292, 125 S.Ct. 1517.

Id. at 292, 125 S.Ct. 1517 (quoting GASH Assocs. v. Rosemont , 995 F.2d 726, 728 (7th Cir. 1993) ).

In the Third Circuit, affirmative defenses may be raised at the motion to dismiss stage if the defenses are "apparent on the face of the complaint." Bethel v. Jendoco Constr. Corp. , 570 F.2d 1168, 1174 (3d Cir. 1978).

See Migra v. Warren City School Dist. Bd. of Educ. , 465 U.S. 75, 77, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984). Though an affirmative defense, res judicata may be raised by in a motion to dismiss. Robinson v. Johnson , 313 F.3d 128, 135 n. 3 (3d Cir.2002) (citing Williams v. Murdoch , 330 F.2d 745, 749 (3d Cir. 1964) ).

See Bd. of Trs. of Trucking Emps. of North Jersey Welfare Fund, Inc. Pension Fund v. Centra , 983 F.2d 495, 505 (3d Cir. 1992) (A party may successfully assert the narrower res judicata concept of issue preclusion "when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted has had a full and fair opportunity to litigate the issue in question."); Marmon Coal Co. v. Director, Office of Workers' Comp. Programs , 726 F.3d 387, 394 (3d Cir. 2013) (quoting Duhaney v. Att'y Gen. , 621 F.3d 340, 347 (3d Cir. 2010) (For a party to succeed on the affirmative defense of res judicata, through the encompassed concept of claim preclusion, three elements must be satisfied: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.").

See ECF No. 26, at 19-22.

Forest Resources, LLC , 83 A.3d at 191.

See ECF Nos. 10-1 & 10-2.

Brown v. Cooney , 296 Pa.Super. 117, 442 A.2d 324, 326 (1982).

Westinghouse Elec. Corp./CBS v. W.C.A.B. (Korach) , 584 Pa. 411, 883 A.2d 579, 588 n. 11 (2005).

See ECF No. 15, at 11-16; ECF No. 22, at 9-12; ECF No. 23, at 14-18.

316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).

515 U.S. 277, 283, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).

See ECF No. 15, at 11-14; ECF No. 22, at 9-11; ECF No. 23, at 14-15.

28 U.S.C. § 2201(a).

Rarick v. Federated Service Insurance Co. , 852 F.3d 223, 227 (3d Cir. 2017).

751 F.3d 129, 146 (3d Cir. 2014). Those factors include: (1) the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy; (2) the convenience of the parties; (3) the public interest in settlement of the uncertainty of obligation; (4) the availability and relative convenience of other remedies; (5) a general policy of restraint when the same issues are pending in a state court; (6) avoidance of duplicative litigation; (7) prevention of the use of the declaratory action as a method of procedural fencing or as a means to provide another forum in a race for res judicata; and (8) (in the insurance context), an inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion. Id.

Rarick , 852 F.3d at 227-28.

Brillhart , 316 U.S. at 494-95, 62 S.Ct. 1173.

See ECF No. 15, at 14-16; ECF No. 22, at 11-12; ECF No. 23, at 15-18.

Baykeeper v. NL Industries, Inc. , 660 F.3d 686 (3d Cir. 2011) (citing Colorado River Water Conservation Dist. v. United States , 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976) ).

Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc. , 571 F.3d 299, 307 (3d Cir. 2009).

Nat'l City Mortg. Co. v. Stephen , 647 F.3d 78, 83 (3d Cir.2011) (quoting Trent v. Dial Medical , 33 F.3d 217, 223 (3d Cir.1994) ).

Id. (quoting Quackenbush v. Allstate Ins. Co. , 517 U.S. 706, 716, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996) ).

See Nationwide , 571 F.3d at 307 (citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp. , 460 U.S. 1, 14, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) ).

Yang v. Tsui , 416 F.3d 199, 205 n. 5 (3d Cir. 2005) (citation omitted).

Id.

Complaint of Bankers Trust Co. v. Chatterjee , 636 F.2d 37, 40 (3d Cir. 1980).

See ECF No.23, at 17.

ECF No. 26, at 16.

Nationwide , 571 F.3d at 308 (citing Spring City Corp. v. American Bldgs. Co. , 193 F.3d 165, 171 (3d Cir. 1999) ).

Trent v. Dial Medical, Inc. , 33 F.3d 217, 225 (3d Cir. 1994) (citing Moses H. Cone , 460 U.S. at 15-16, 103 S.Ct. 927 ).

Moses H. Cone , 460 U.S. at 16, 103 S.Ct. 927.

Ingersoll-Rand Financial Corp. v. Callison , 844 F.2d 133, 136 (3d Cir. 1988) ; see also Ryan v. Johnson , 115 F.3d 193, 196 n. 1 (3d Cir. 1997) (describing element as whether either court has assumed in rem jurisdiction over property).

See Morgan Stanley Dean Witter Reynolds v. Gekas , 309 F.Supp.2d 652, 657 (M.D.Pa.2004) (citing Colorado River , 424 U.S. at 820, 96 S.Ct. 1236 ).

Nationwide Fire Ins. , 571 F.3d at 308 (citing Spring City Corp. v. American Bldgs. Co., 193 F.3d 165, 172 (3d Cir. 1999) ).

See ECF No. 26, at 17; ECF No. 29, at 15.

Moses H. Cone , 460 U.S. at 22, 103 S.Ct. 927.

Id. at 26, 103 S.Ct. 927.

Moses H. Cohen , 460 U.S. at 25-26, 103 S.Ct. 927 ("[T]he task is to ascertain whether there exists 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under Colorado River to justify the surrender of that jurisdiction.").

See ECF No. 15, at 16-18; ECF No. 22, at 12-15; ECF No. 23, at 18-20.

See ECF No. 26, at 18-19.

Fed. R. Civ. P. 8(c).

Robinson v. Johnson , 313 F.3d 128, 135 (3d Cir. 2002) ; see Oshiver v. Levin, Fishbein , Sedran & Berman , 38 F.3d 1380, 1384 n.1 (3d Cir. 1994).

Byrne v. Cleveland Clinic , 684 F.Supp.2d 641, 658 n. 17 (E.D.Pa. 2010) (citing Zankel v. Temple Univ. , 245 Fed. Appx. 196, 198 (3d Cir.2007) ).

752 A.2d 906, 908 (Pa. Super. Ct. 2010) ; Appel v. Kaufman , 728 F.Supp.2d 684, 699 (E.D.Pa. 2010).

Compl. (ECF No. 1) ¶¶ 33-35.

See ECF No. 15, at 16-18; ECF No. 22, at 13-15; ECF No. 23, at 18-20.

Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D.Pa. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues for trial. See id. Here, the parties have faithfully complied with this rule. The Court need not compile a separate background based on this material as the issue presented by Plaintiffs' Motion for Summary Judgment is purely legal.

See ECF No. 30.

See ECF No. 31.

As noted immediately above, this argument is without merit and will not be re-addressed here. See Section III.A.4.

See ECF No. 42.

I reject Defendants' argument that summary judgment is inappropriate because discovery is needed concerning the intent of the parties. Introduction of this parol evidence, however, necessarily requires a finding that the Lease Agreement was ambiguous and non-integrated. As will be explained below, and as found by the Pennsylvania Superior Court in Forest Resources, LLC, the Lease Agreement, as one document, is neither. See LJL Transp., Inc. v. Pilot Air Freight Corp. , 599 Pa. 546, 962 A.2d 639, 647 (2009) ("When the words of an agreement are clear and unambiguous, the intent of the parties is to be ascertained from the language used in the agreement, which will be given its commonly accepted and plain meaning." (citations omitted) ).

See ECF No. 42, at 6-7.

Id. at 8-13.

185 F.Supp.3d 517, 547 (M.D.Pa. 2016) (citations omitted).

Id.

Id.

See ECF No. 48, at 6-7 (collecting cases).

Forest Resources, LLC , 83 A.3d at 189.

See ECF No. 32-4, at 1.

Id. at ¶¶ 1, 3.

Id. at ¶ 5.

58 P.S. § 33 (emphasis added).

See Kilmer v. Elexco Land Servs. , 605 Pa. 413, 990 A.2d 1147, 1156 (2010) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")(quoting 1 Pa.C.S. § 1921(b) ).

See ECF No. 42, at 13-17. Indeed, this Court finds unpersuasive Defendants' arguments that (1) the sophistication of the parties somehow justifies this result, and (2) that the assignment back provision was somehow an allowable assignment of Plaintiffs' royalty provision in the lease. Concerning the latter argument, while Plaintiffs are correct that the Superior Court noted that the GMRA does not prevent a lessor from assigning its royalties, the Superior Court nevertheless wrote that such an assignment must be "independent of the lease or conveying agreement." Forest Resources, LLC , 83 A.3d at 190-91. Given this Court's finding that the violative assignment back provision was part and part of one conveyance agreement, this argument is unpersuasive.

See ECF No. 48, at 11 (citing Commw. v. Diodoro , 601 Pa. 6, 970 A.2d 1100, 1107 (2009) ).

See Fitzpatrick v. Shay , 314 Pa.Super. 450, 461 A.2d 243, 247 (1983) ("An agreement that cannot be performed without violating a statute is illegal and will not be enforced.").