PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-3388
_____

MARMON COAL COMPANY;
INTERNATIONAL BUSINESS AND
MERCANTILE REASSURANCE COMPANY,

Petitioners

v.

DIRECTOR, OFFICE OF WORKERS'
COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
ETHEL D. ECKMAN, Widow of JOHN H. ECKMAN,

Respondents
_____

On Petition for Review from an
Order of the Benefits Review Board,
United States Department of Labor
(Benefits Review Board No. 11-0766 BLA)
_____

Argued May 15, 2013
Before:  SMITH, FISHER and CHAGARES, *Circuit Judges*.

(Opinion Filed:  August 8, 2013)

Laura M. Klaus, Esq.
Mark E. Solomons, Esq. (ARGUED)
Greenberg Traurig
2101 L Street, N.W., Suite 1000
Washington, DC  20037
        *Counsel for Petitioners*

Rae Ellen James, Esq.
Barry H. Joyner, Esq. (ARGUED)
Gary K. Stearman, Esq.
United States Department of Labor
Office of the Solicitor
200 Constitution Avenue, N.W.
Washington, DC  20210
        *Counsel for Director, Office of*
        *Workers' Compensation Programs,*
        *U.S. Department of Labor*

Robert J. Bilonick, Esq.
Pawlowski, Bilonick & Long
603 North Julian Street
P.O. Box 658
Ebensburg, PA  15931
        *Counsel for Ethel D. Eckman*

_____

OPINION OF THE COURT

_____

FISHER, *Circuit Judge*.

Marmon Coal Company and its carrier (collectively, "Marmon") petition for review of a decision by the Benefits Review Board (the "Board") of the U.S. Department of Labor (the "DOL"), which confirmed an award of survivors' benefits to Ethel Eckman under the Black Lung Benefits Act (the "BLBA"), 30 U.S.C. § 901 *et seq.*, as amended by the Patient Protection and Affordable Care Act (the "ACA"), Pub. L. No. 111-148, § 1556, 124 Stat. 119, 260 (2010). For the reasons stated below, we will deny the petition for review.

I.

A. Statutory Background

The BLBA provides coal miners and their surviving dependents with a means to obtain benefits in compensation for the disabling effects of pneumoconiosis (i.e., black lung disease). There have been several changes in the law with respect to survivors' benefits over the past forty-four years. Congress first provided benefits to surviving dependents of coal miners afflicted with pneumoconiosis through the Federal Coal Mine Health and Safety Act of 1969 (the "FCMHSA"), 30 U.S.C. § 841 *et seq*. In 1972, Congress amended the FCMHSA and re-designated Title IV of the Act as the BLBA. The BLBA has been amended numerous times

3

since its original enactment.[1]  Until 1982, a deceased miner's dependents could obtain survivors' benefits under the BLBA by showing that the miner's death was substantially caused by pneumoconiosis *or* by merely showing that the miner had been awarded benefits during his lifetime.  Thus, surviving dependents were entitled to benefits automatically if the miner had been awarded benefits during his lifetime, even if pneumoconiosis played no role in the miner's death.[2]  *See* 30 U.S.C. § 922(a)(2) (1970).

In 1981, due to a soaring increase in the number of claims for benefits under the BLBA, Congress prospectively eliminated the automatic entitlement to benefits for surviving dependents.  *See* Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, 95 Stat. 1635 (1981).  Instead, after January 1, 1982, surviving dependents could receive benefits

---

[1] The Black Lung Benefits Act was significantly amended in 1977, 1981, and 2010.  *See* Black Lung Benefits Revenue Act of 1977, Pub. L. No. 95-227, 92 Stat. 11 (1978); Black Lung Benefits Reform Act of 1977, Pub. L. No. 95-239, 92 Stat. 95 (1978); Black Lung Benefits Revenue Act of 1981 and Black Lung Benefits Amendments of 1981, Pub. L. No. 97-119, 95 Stat. 1635 (1981); Patient Protection and Affordable Care Act, Pub. L. No. 111-148, 124 Stat. 119 (2010).

[2] This design for awarding benefits has been referred to as an automatic "derivative benefits" system.  *See Union Carbide Corp. v. Richards*, --- F.3d ---, Nos. 12-1978, 12-1294, 2013 WL 3358994, at *1 (4th Cir. July 5, 2013).

4

only after proving that pneumoconiosis substantially contributed to the miner's death.

The DOL regulations pertaining to the BLBA, as amended in 1981, distinguish between survivors' "previously filed" claims and survivors' "subsequent" claims. 20 C.F.R. § 725.309(d). A "subsequent" claim is a claim filed "more than one year after the effective date of a final order denying a claim previously filed by the claimant." *Id.* The DOL comments to this regulation include the following statement:

> "Where a previous survivor's claim was denied solely on the basis that the survivor did not prove that the miner died due to pneumoconiosis, an element not subject to change, the survivor may be barred from litigating another claim filed more than one year after the denial of the first one."

65 Fed. Reg. 79973.

In 2010, Congress enacted the ACA, the much publicized and debated healthcare law. Lost in the larger debate over the proper role of the federal government in the health insurance market was a little known provision of the ACA that amended the BLBA and reinstated automatic entitlement to benefits for surviving dependents. *See* ACA § 1556; *B&G Constr. Co. v. Dir., OWCP*, 662 F.3d 233, 247-53 (3d Cir. 2011) (holding that the ACA reinstated automatic entitlement to benefits for surviving dependents). The BLBA provision titled "Filing of new claims or refiling or revalidation of claims of miners already determined eligible

at time of death," which is codified at 30 U.S.C. § 932(*l*), now reads as follows:

> "In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner."

Section 1556(b) of the ACA simply eliminated from the end of § 932(*l*) the following language: "except with respect to a claim filed under this part on or after the effective date of the Black Lung Benefits Amendments of 1981." Critically, for purposes of this case, § 1556(c) of the ACA specifies the applicability and scope of the amendment to § 932(*l*):

> "The amendments made by this Section shall apply with respect to claims filed under part B or part C of the Black Lung Benefits Act (30 U.S.C. 921 et seq., 931 et seq.) after January 1,

6

2005, that are pending on or after the date of enactment of this Act."[3]

The DOL, on March 30, 2012, proposed new regulations to implement the ACA's amendments to § 932(*l*). *See* 77 Fed. Reg. 19456-78. The proposed regulations take the position that "the ACA created, for certain survivors, a new cause of action by establishing a new method of demonstrating entitlements to benefits." *Id.* at 19468. The proposed regulations further provide that § 932(*l*), as amended, "applies to all survivors' claims meeting the effective-date requirements" and that the amendment "fundamentally altered the legal landscape for subsequent survivors' claims and requires a revision to current § 725.309(d)." *Id.*

---

[3] In *B&G Construction Co. v. Director, OWCP*, we noted that the ACA "relieves a survivor from filing a new claim for benefits provided the survivor files a claim for benefits after January 1, 2005, a seeming inconsistency," but that "surely a widow seeking benefits must file something in order to receive them." 662 F.3d 233, 244 n.12 (3d Cir. 2011). We now confirm that indeed a widow must file something in order to receive benefits, and we clarify that there is no inconsistency with respect to the ACA's effect on the BLBA: the ACA revives § 932(*l*)'s automatic benefits to the extent that a survivor files a claim for benefits after January 1, 2005, that is pending on or after the ACA's effective date, March 23, 2010.

B.  Factual and Procedural History

After leaving coal mining, John Eckman filed a claim for benefits under the BLBA in 1985.  An Administrative Law Judge ("ALJ") awarded benefits in 1993, and the Board affirmed the decision on appeal.  Marmon then paid benefits to John Eckman until his death on May 2, 2002.  John Eckman's widow, Ethel Eckman, filed a claim for benefits as a dependent survivor on May 7, 2002, five days after her husband's death.  An ALJ denied her claim in 2005, finding that although John Eckman had pneumoconiosis, Ethel Eckman failed to prove that his death was due to the disease.  Ethel Eckman appealed to the Board, which affirmed the ALJ's decision on March 28, 2006.  The Board's decision became final on May 27, 2006.

After Congress enacted the ACA and amended the BLBA on March 23, 2010, Ethel Eckman filed a new claim on September 10, 2010.  A DOL district director awarded benefits based on her new claim.  Marmon then asked for an ALJ hearing.  The ALJ agreed with the district director and awarded benefits.  The ALJ specifically found that Ethel Eckman satisfied the familial relationship and dependency criteria for survivors under the BLBA.  The ALJ also found that, based on John Eckman's lifetime disability award and the filing date of Ethel Eckman's subsequent claim, Ethel Eckman was entitled to benefits under § 932(*l*), as amended by the ACA.  The ALJ awarded benefits as of April 2006, the month after the Board issued its decision on Ethel Eckman's original claim.

8

Marmon appealed to the Board, arguing that Ethel Eckman's subsequent claim was barred by the DOL's pre-ACA regulations and principles of res judicata. The Board rejected these arguments. After affirming the award, the Board modified the entitlement date on the claim to June 2006, the month after the Board's decision on the original claim became final. Marmon then petitioned this Court for review.

## II.

We have jurisdiction over a petition for review of a final order from the Board under 33 U.S.C. § 921(c). The Board's decisions on matters of law are subject to plenary review. *Lombardy v. Dir., OWCP*, 355 F.3d 211, 213 (3d Cir. 2004).

## III.

This case concerns a "subsequent" claim for benefits by a surviving dependent under the recently amended BLBA. With respect to original or first-time claims, we have already determined that § 932(*l*), as amended, automatically entitles surviving dependents to benefits if the miners were eligible to receive benefits at the time of their deaths. *See B&G Constr.*, 662 F.3d at 247-53. Now, we must determine (1) whether § 932(*l*), as amended, applies to a subsequent claim for benefits where the original claim was denied due to the claimant's failure to show that pneumoconiosis substantially contributed to the miner's death, and (2) whether res judicata precludes a post-amendment award of survivors' benefits on a subsequent claim where the original claim was denied due to

the claimant's failure to show that pneumoconiosis substantially contributed to the miner's death.

The only Court of Appeals to have addressed these issues has held that § 932(*l*), as amended, applies to subsequent claims that are filed and pending within the proper temporal thresholds, and that res judicata does not preclude a post-amendment award of survivors' benefits on a subsequent claim where the original claim was denied due to the claimant's failure to show that pneumoconiosis substantially contributed to the miner's death. *See Union Carbide Corp. v. Richards*, --- F.3d ---, Nos. 12-1978, 12-1294, 2013 WL 3358994 (4th Cir. July 5, 2013).

## A. The Scope of ACA § 1556

Marmon's first argument is that Eckman's subsequent claim is foreclosed by the lack of a specific reference to subsequent claims in the language of ACA § 1556(c), which outlines the applicability and scope of the ACA's amendments to the BLBA. Thus, our first task is to determine whether the success of a subsequent claim is foreclosed by the following statutory language: "The amendments made by this Section shall apply with respect to *claims* filed . . . after January 1, 2005, that are pending on or after the date of enactment of this Act." ACA § 1556(c) (emphasis added).

The goal of statutory interpretation is to "give effect to Congress's intent." *B&G Constr.*, 662 F.3d at 248. The most reliable indication of Congress's intent is found in the plain language of the statute. *Id.* Where the statutory language is

10

plain and unambiguous, it is rarely necessary to inquire further into the statute's meaning. *Id.* Further inquiry should be made only "where the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters, or where the result would be so bizarre that Congress could not have intended it." *Id.*

Section 1556(c) of the ACA refers to "claims" without any qualifying language. The reference to claims is not explicitly limited to "first time" or "original" claims and it does not explicitly exclude "subsequent" claims. Presumably, Congress could have explicitly indicated that the amendment excludes subsequent claims, but Congress made no such indication. Thus, the plain language of ACA § 1556(c) encompasses Eckman's subsequent claim, which was filed after January 1, 2005, and was pending after March 23, 2010, the date of the ACA's enactment.

There is no evidence of congressional intent that would contradict this plain language reading of the statute. The legislative history associated with ACA § 1556 is rather sparse. In fact, the only legislative history of record pertaining to this particular section is a post-enactment statement by Senator Robert Byrd, which states as follows:

> "It is clear that the section will apply to all claims that will be filed henceforth, including many claims filed by miners whose prior claims were denied, or by widows who never filed for benefits following the death of a husband. But section 1556 will also benefit all of the claimants who have recently filed a claim, and

11

are awaiting or appealing a decision or order, or who are in the midst of trying to determine whether to seek a modification of a recent order.

Section 1556 applies immediately to all pending claims, including claims that were finally awarded or denied prior to the date of enactment of the Patient Protection and Affordable Care Act, for which the claimant seeks to modify a denial, or for which other actions are taken in order to modify an award or denial, in accordance with 20 CFR 725.309(c) or 725.310. Section 1556 applies even if a final order is modified, or actions are taken to bring about the modification of an order, subsequent to the date of enactment of the Patient Protection and Affordable Care Act, in accordance with the sections of Part 725 that I mentioned."

156 Cong. Rec. S2083-84 (Mar. 25, 2010) (statement of Sen. Byrd).

We have not lost sight of the Supreme Court's statement that "[p]ost-enactment legislative history is not only oxymoronic but inherently entitled to little weight." *Massachusetts v. EPA*, 549 U.S. 497, 530 n.27 (2007). However, because we have previously stated that this particular piece of legislative history is "nevertheless significant inasmuch as [Senator Byrd] was the sponsor of section 1556, a single amendment in a complex bill of great

12

length," *B&G Constr.*, 662 F.3d at 251, we will address the substance of Senator Byrd's statement as it applies to the issue at hand.

Marmon asserts that the first sentence of Senator Byrd's statement includes an exhaustive list of claims affected by ACA § 1556, and because the list does not include subsequent claims by survivors, his statement must be interpreted to support the position that ACA § 1556 does not cover such claims. However, Senator Byrd's reference to the section as "including" certain claims does not necessarily indicate that his list is exhaustive. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012) (addressing a statutory definition introduced with the verb "includes," and stating that "[t]his word choice is significant because it makes clear that the examples enumerated in the text are intended to be illustrative, not exhaustive"); *see also Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("the term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle"). Indeed, Senator Byrd's list does not include the largest class of potential claims: original claims filed by miners, either pending or filed henceforth. Furthermore, Senator Byrd's first sentence reference to "all claims" supports an interpretation of ACA § 1556 that does not exclude subsequent claims. Thus, this post-enactment statement does not support a reading of ACA

13

§ 1556(c) that is contrary to a literal interpretation of the section's plain language.[4]

Marmon's argument with respect to the applicability and scope of ACA § 1556(c), however, does not end with the section's plain language and legislative history. Rather, Marmon asserts that we cannot interpret ACA § 1556(c) to encompass subsequent claims because to do so would contradict principles of finality and res judicata. On this point, Marmon relies heavily on *Pittston Coal Group v. Sebben*, 488 U.S. 105, 122-23 (1988), where a class of claimants failed to appeal the DOL's denial of their claims under the BLBA, but asked for their claims to be re-opened and re-adjudicated because the DOL had applied the wrong entitlement criteria. The Supreme Court agreed that the DOL failed to apply the proper entitlement criteria, but declined to re-open and re-adjudicate the finally determined claims

---

[4] Senator Byrd also stated that ACA § 1556 applies to "all pending claims, including claims that were finally awarded or denied . . . for which the claimant seeks to modify a denial . . . in accordance with 20 CFR 725.309(c)." Marmon asserts that Senator Byrd's reference to § 725.309(c), which pertains to modification of claims, instead of § 725.309(d), which pertains to subsequent claims, indicates a desire to exclude subsequent claims. However, this assertion is contradicted by the same reasoning that belies Marmon's other legislative history arguments: a reference to the section as "including" certain claims does not indicate exclusivity. *See Christopher v. SmithKline Beecham Corp.*, 132 S. Ct. 2156, 2170 (2012).

absent specific congressional authorization. *Id.* at 121-23. The Court re-emphasized the principle that a claimant cannot "avoid the bar of res judicata on the ground that the decision was wrong." *Id.* at 123.

*Pittston Coal Group*, however, is not sufficiently on point to control the issue at hand. In contrast to the claimants in *Pittston Coal Group*, Eckman is not seeking to "re-open" a previously denied claim or to "avoid the bar of res judicata" on the ground that her original claim was wrongly decided. Instead, Eckman brings a "subsequent" claim based on new assertions of entitlement. Thus, contrary to Marmon's argument, our conclusion that ACA § 1556(c) encompasses subsequent claims does not disregard principles of finality and res judicata, and because we have no intention of disregarding such principles, we will address in the following

15

subsection the question of whether Eckman's subsequent claim for survivors' benefits is barred by res judicata.[5]

## B.  Res Judicata

Res judicata bars a party from initiating a subsequent suit against the same adversary based on the same cause of action as a prior suit.  *Duhaney v. Att'y Gen.*, 621 F.3d 340, 347 (3d Cir. 2010).  The purpose of res judicata is to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication."  *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

Federal common law governs our determination as to whether a prior adjudication should be given preclusive effect.  *Taylor v. Sturgell*, 553 U.S. 880, 891 (2008).  A party

---

[5] The parties debate whether the interpretation of the BLBA by the Director of the Office of Workers' Compensation Programs, expressed in lieu of a final rule, is deserving of *Skidmore* deference, and if so, to what extent deference should be afforded.  *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (holding that the opinions of a responsible administrative agency "constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance").  Because we conclude (without regard for deference) that the amended BLBA does not exclude subsequent claims, it is unnecessary to address whether, and to what extent, the Director's interpretation should be afforded *Skidmore* deference.

seeking to invoke res judicata must establish three elements: "(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action." *Duhaney*, 621 F.3d at 347 (internal quotation marks and citation omitted). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *Id.* (internal quotation marks and citation omitted). The Director of the Office of Workers' Compensation Programs (the "Director"), the Federal Respondent in this case, does not dispute that Eckman's prior suit resulted in a final judgment on the merits involving the same parties. Instead, the Director asserts that Eckman's subsequent claim involves a different cause of action.

"We have disavowed attempts to create a simple test for determining what constitutes a cause of action for res judicata purposes." *Id.* at 348 (internal quotation marks and citation omitted). The focus of the inquiry is the "essential similarity of the underlying events giving rise to the various legal claims." *Id.* (internal quotation marks and citation omitted). Factors relevant to this determination include (1) whether the acts complained of were the same; (2) whether the material facts alleged in each suit were the same; and (3) whether the witnesses and documentation required to prove such allegations were the same. *Id.* The mere existence of common elements of fact between two claims does not establish the same cause of action if the critical acts and the necessary documentation were different for the two claims. *See id.* at 349. In addition, an identical sought-after remedy for each of the claims is not dispositive

17

for purposes of determining whether the second claim involves a new cause of action. *See id.*

Here, although there were common elements of fact alleged in each suit, the material facts alleged in each suit were different, and the witnesses and documentation required to prove the material facts were also different. In her first claim, Eckman could recover only by proving that her husband's death was due to pneumoconiosis. The resolution of that issue centered on the fact-finder's review of medical evidence. In contrast, in her subsequent claim, Eckman can recover without proving that her husband's death was due to pneumoconiosis. The cause of death is not at issue, and the medical evidence presented during the first claim is no longer relevant. Rather, Eckman's entitlement to benefits turns primarily on an administrative fact – whether her husband had been awarded benefits. This administrative fact was not relevant to her first claim. The subsequent claim thus

18

involves a different cause of action,[6] and res judicata does not prevent Eckman from receiving survivors' benefits under the BLBA.[7]

---

[6] We have previously described res judicata in administrative adjudications as "not encrusted with the rigid finality that characterizes its application in purely judicial proceedings," *Purter v. Heckler*, 771 F.2d 682, 691 (3d Cir. 1985), and we have further held that "refusal to apply 'administrative' res judicata in a strictly technical fashion is consistent with this circuit's view that more significance should be placed on fairness in the administrative process than on the finality of administrative judgments." *Id.* at 693. However, in this case, we do not rely on any relaxed administrative standard to hold that Eckman's subsequent claim involves a different cause of action than her original claim.

[7] Marmon's due process argument is a variant of its res judicata argument in that Marmon contends that a claimant's entitlement to benefits on a subsequent claim violates due process because it deprives coal mine operators of the benefit of finality. *See RAG Am. Coal Co. v. OWCP*, 576 F.3d 418, 428 n.6 (7th Cir. 2009) (stating in a footnote that a party's "claim that the refusal to apply ordinary principles of finality denies it due process of law is nothing more than a variation of its res judicata argument"). The finality of Eckman's original claim is relevant to whether res judicata bars her subsequent claim. However, because the subsequent claim was brought under a new cause action, res judicata does not preclude an award of benefits.

19

## IV.

The Board did not err in confirming an award of survivors' benefits to Eckman under the BLBA, as amended by the ACA. Thus, we will deny Marmon's petition for review.