NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2067
_____

CONSOLIDATION COAL COMPANY,

Petitioner

v.

DIRECTOR OFFICE OF WORKERS COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR;
FRANCES FUNKA, on behalf of and as survivor of
JOHN FUNKA,

Respondents
_____

On Petition for Review of a Decision and
Order of the Benefits Review Board
(BRB No. 16-0184 BLA)
_____

Submitted Under Third Circuit LAR 34.1(a)
January 12, 2018

Before:  JORDAN, ROTH, <u>Circuit Judges</u> and MARIANI[*], <u>District Judge</u>

(Filed: July 12, 2018)
_____
OPINION[**]
_____

---

[*] Honorable Robert D. Mariani, United States District Court Judge for the Middle District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

MARIANI, District Judge

Consolidation Coal Company ("Consolidation") petitions for review of a decision of the United States Department of Labor Benefits Review Board ("BRB"), affirming an award of disability benefits to a deceased miner, John Funka, and an award of survivor's benefits to Mr. Funka's widow, Frances Funka, under the Black Lung Benefits Act ("BLBA"), 30 U.S.C. §§ 901-944. For the reasons discussed below, we will deny Consolidation's Petition for Review.

## I.  Background

John Funka worked underground in coal mines for at least forty years. Mr. Funka spent the first twenty years of his career as a maintenance supervisor and section mechanic for Matthews Coal Company, now owned by Consolidation, before becoming a deep mine electrical inspector for the Office of Deep Mine Safety. Prior to retiring on December 13, 1991, Mr. Funka began experienced breathing difficulties. The problem steadily worsened and, by 1993, Mr. Funka was receiving medical treatment to address his breathing.

On June 5, 2003, Mr. Funka filed a claim for benefits under the BLBA. After the district director proposed awarding benefits, Consolidation requested a formal hearing. On September 23, 2005, after conducting a formal hearing, Administrative Law Judge ("ALJ") Michael Lesniak issued a Decision and Order denying benefits. Mr. Funka appealed ALJ Lesniak's decision to the BRB. On December 11, 2005, before the BRB issued a decision on his appeal, Mr. Funka died. Mrs. Funka then filed a survivor's claim on August 7, 2006.

2

In a Decision and Order issued on November 15, 2006, the BRB affirmed in part, vacated in part, and remanded the matter. On remand, Mr. Funka's claim was consolidated with Mrs. Funka's claim and ALJ Lesniak remanded both claims to the district director to reopen the evidentiary record and consider, among other things, the autopsy evidence and death certificate. The district director proposed awarding benefits on both claims and Consolidation timely requested a formal hearing. The case was reassigned to ALJ Ralph Romano, who held a formal hearing and issued a Decision and Order awarding benefits on March 4, 2008. Consolidation appealed the decision to the BRB and, on March 26, 2009, the BRB vacated the award of benefits and remanded the matter for further consideration.

In a Decision and Order issued on December 20, 2011, ALJ Romano once again awarded benefits on both the miner's claim and the survivor's claim. Consolidation appealed. During the proceedings before the BRB, Mrs. Funka raised the issue of whether Consolidation improperly exceeded the evidentiary limitations found in 20 C.F.R. § 725.414 by submitting three medical opinions. On January 30, 2013, the BRB affirmed in part, vacated in part, and remanded. As part of its order, the BRB directed the ALJ to evaluate whether a report authored by Dr. Oesterling constituted rebuttal autopsy evidence pursuant to 20 C.F.R. § 725.414.

On remand, the matter was reassigned to ALJ Theresa Timlin. ALJ Timlin directed the parties to submit "an evidence summary form designating evidence in the living miner's claim and a separate evidence summary form designating evidence in the survivor's claim." (App. at 79.) Over Consolidation's objections, ALJ Timlin issued an

order on November 12, 2015, identifying what evidence would be considered in connection with the pending claims.

On December 10, 2015, ALJ Timlin issued a Decision and Order awarding benefits on both the miner's claim and the survivor's claim. Noting that no regulatory presumption of pneumoconiosis applied to Mr. Funka's claim[1] and that the BRB had already affirmed ALJ Romano's finding that pneumoconiosis was not established through X-ray evidence, ALJ Timlin evaluated the autopsy evidence. After reviewing the autopsy report of Dr. James Holimon and Dr. Everett Oesterling, ALJ Timlin credited Dr. Oesterling's opinion that the autopsy did not reveal pneumoconiosis. Turning to the physician opinion evidence, ALJ Timlin outlined the findings of the three doctors who submitted medical reports: Dr. Joseph Tomashefski, Dr. Gregory Fino, and Dr. Francis Green.

Dr. Tomashefski, who is board-certified in anatomic and clinical pathology, reviewed twenty of Mr. Funka's autopsy slides and Mr. Funka's medical records. Dr. Tomashefski concluded that Mr. Funka died as a result of diffuse end state interstitial

---

[1] Twenty C.F.R. § 718.305 creates a regulatory presumption that a miner has pneumoconiosis if certain criteria are met. This presumption, however, applies only to claims filed after January 1, 2005. 20 C.F.R. § 718.305(a). As ALJ Timlin correctly concluded, Mr. Funka was not entitled to the § 718.305 presumption because Mr. Funka filed his claim on June 5, 2003. Further, although this presumption did apply to Mrs. Funka's claim, which was filed on August 7, 2006, ALJ Timlin never analyzed the merits of the survivor's claim. Instead, after awarding benefits on Mr. Funka claim, ALJ Timlin automatically awarded benefits on Mrs. Funka's claim. *See* 30 U.S.C. § 932(l) ("In no case shall the eligible survivors of a miner who was determined to be eligible to receive benefits under this subchapter at the time of his or her death be required to file a new claim for benefits, or refile or otherwise revalidate the claim of such miner.").

fibrosis. The doctor opined that Mr. Funka did not have coal workers' pneumoconiosis based upon the lack of coal macules and micronodules. Dr. Tomashefski also noted minimal black pigment in the slides of Mr. Funka's lungs and observed that the pigmentation was consistent with the amount one would expect to find in the lungs of someone who had never worked in coal mines. Ultimately, Dr. Tomashefski diagnosed Mr. Funka with idiopathic pulmonary fibrosis. Dr. Tomashefski cited to several articles to support his conclusion, including articles authored by Dr. Green. At his deposition, Dr. Tomashefski testified that several rationales supported his diagnosis, including that (1) Mr. Funka's pulmonary function decreased more rapidly between 2003 and 2005 than would be expected in a retired coal miner, (2) the honeycombing in Mr. Funka's lungs was inconsistent with coal mine dust exposure, and (3) the regional variability of fibrosis in Mr. Funka's lungs was inconsistent with pneumoconiosis.

Dr. Fino, who is board-certified in internal medicine and pulmonary medicine, offered his opinion based on a review of Mr. Funka's medical records and two pathology reports. Dr. Fino also diagnosed Mr. Funka with idiopathic pulmonary fibrosis because Mr. Funka had diffuse interstitial pulmonary fibrosis and Dr. Fino's review of the medical literature found no support for a link between this type of fibrosis and coal dust inhalation. Dr. Fino noted that in the few studies that connect pulmonary fibrosis to pneumoconiosis, the fibrosis was heavily pigmented. Thus, because Dr. Fino found minimal anthracotic pigment, he opined that coal mine dust did not cause Mr. Funka's disability or death. Dr. Fino supported his conclusion with citation to the medical literature including a book and article authored by Dr. Green. At his deposition, Dr. Fino

also noted that Mr. Funka's disease progressed rapidly, unlike what would be expected with pulmonary fibrosis induced by coal dust exposure. Dr. Fino also noted the presence of honeycombing in Mr. Funka's lungs and testified that coal mine dust does not cause honeycombing.

Dr. Green, who is board-certified in anatomic pathology, offered an opinion based upon his review of Mr. Funka's autopsy slides and medical records. Dr. Green described fibrosis that had been present for many years and showed some, but minimal, pigmentation. He opined that the lack of pigmentation was likely due to Mr. Funka's lungs clearing the coal mine dust. The doctor noted the presence of coal dust macules and micronodules in parts of the lungs and rounded opacities in the upper lung consistent with pneumoconiosis. Dr. Green diagnosed minimally severe simple coal worker pneumoconiosis and opined that pneumoconiosis was the direct cause of Mr. Funka's death. Based upon the advanced state of the interstitial fibrosis in 2003, Dr. Green estimated a "conservative" onset date of 1998. (App. at 102.) The doctor noted that idiopathic pulmonary fibrosis is rare in the general population. Citing to the medical literature, Dr. Green provided three reasons why idiopathic pulmonary fibrosis was an improper diagnosis: (1) several experts have determined that idiopathic pulmonary fibrosis is an inappropriate diagnosis for those who have a history of fibrogenic dust exposure; (2) Mr. Funka lived significantly longer than would be typical for someone diagnosed with idiopathic pulmonary fibrosis; and (3) recent studies have indicated that idiopathic pulmonary fibrosis is usually due to dust and fume exposure. At his deposition, Dr. Green explained that coal mine induced fibrosis and idiopathic pulmonary

6

fibrosis are clinically indistinguishable. That is, doctors cannot distinguish the two conditions "radiologically or by pulmonary function testing." (App. at 397.) According to Dr. Green, the only notable difference is that a longer survival rate is associated with coal mine induced fibrosis.

ALJ Timlin found that "Dr. Green's opinion on legal and clinical pneumoconiosis merits significant probative weight because it is well reasoned and well documented." (App. at 105.) The ALJ afforded less weight to the opinions of Dr. Tomashefski and Dr. Fino, finding that both doctors' opinions were contrary to the BLBA's regulations and ignored the possibility of legal pneumoconiosis. Thus, based on Dr. Green's opinion, ALJ Timlin concluded that Mr. Funka suffered from pneumoconiosis. Next, finding that Mr. Funka's years of coal mine employment entitled him to a regulatory presumption that his pneumoconiosis arose out of his coal mine employment,[2] the ALJ concluded that Consolidation failed to rebut this presumption. Finally, the ALJ concluded that Mr. Funka was totally disabled due to pneumoconiosis caused pulmonary fibrosis. Having made these findings, ALJ Timlin awarded benefits both on Mr. Funka's claim and Mrs. Funka's survival claim.

---

[2] This regulatory presumption, found in 20 C.F.R. § 718.203(b), should not be confused with the § 718.305 regulatory presumption discussed above. Section 718.305 concerns a rebuttable presumption that miners who meet certain criteria have established that they have pneumoconiosis. Section 718.203(b), in contrast, provides that once a miner establishes that he or she has pneumoconiosis, there is "a rebuttable presumption that the pneumoconiosis arose out of" coal mine employment if the miner "was employed for ten years or more in one or more coal mine."

7

Consolidation appealed the ALJ's decision to the BRB. The BRB affirmed the award of benefits on March 15, 2017, finding that the ALJ did not abuse her discretion in ordering the evidence re-designated and that she did not err in weighing the respective medical opinions. Consolidation then petitioned for review by this Court.

## II.    Standard of Review

We have jurisdiction under 30 U.S.C. § 932(a), which incorporates the review procedures of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), in pneumoconiosis cases involving coal miners. *See Labelle Processing Co. v. Swarrow*, 72 F.3d 308, 310 (3d Cir. 1995). "We review the [BRB]'s decision to determine whether it committed an error of law and whether it adhered to its scope of review. In performing the latter function, we must independently review the record and decide whether the ALJ's findings are supported by substantial evidence." *Wensel v. Dir., Office of Workers' Comp. Programs*, 888 F.2d 14, 16 (3d Cir. 1989) (quotation marks omitted). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Dir., Office of Workers' Comp. Programs*, 562 F.3d 264, 268 (3d Cir. 2009) (quoting *Mancia v. Dir., Office of Workers' Comp. Programs*, 130 F.3d 579, 584 (3d Cir. 1997)). "The [BRB]'s decisions on matters of law are subject to plenary review." *Marmon Coal Co. v. Dir., Office of Workers' Comp. Programs*, 726 F.3d 387, 391 (3d Cir. 2013).

## III.    Discussion

"Benefits are provided under the [BLBA] for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to

8

pneumoconiosis at the time of death." 20 C.F.R. § 718.204(a). "[A] miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone," meets certain regulatory criteria. 20 C.F.R. § 718.204(b)(1). "A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis . . . is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." 20 C.F.R. § 718.204(c)(1). An eligible survivor is automatically entitled to benefits if the miner was eligible for benefits at the time of the miner's death. 30 U.S.C. § 932(l). Here, there is no dispute that Mr. Funka was totally disabled from a pulmonary impairment. Instead, the dispute centers on whether Mr. Funka had pneumoconiosis and whether his disability was due to pneumoconiosis.

The regulations enacted pursuant to the BLBA define pneumoconiosis as "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 20 C.F.R. § 718.201(a). The regulations recognize both "Clinical Pneumoconiosis," defined as "those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment," and "Legal Pneumoconiosis," defined as "any chronic lung disease or impairment and its sequelae arising out of coal mine employment." 20 C.F.R. § 718.201(a)(1)-(2). "[P]neumoconiosis may be shown through 1) a chest x-ray; 2) a biopsy; 3) statutory presumptions . . . ; 4) a physician's evaluation."

9

*Penn Allegheny Coal Co. v. Williams*, 114 F.3d 22, 23 (3d Cir. 1997) (citing 20 C.F.R. §

718.202). [3]

Broadly speaking, Consolidation raises two issues on appeal. First, Consolidation

claims that ALJ Timlin committed various errors when she credited Dr. Green's medical

opinion and rejected the medical opinions of Dr. Tomashefski and Dr. Fino. Second,

Consolidation argues that ALJ Timlin abused her discretion when she ordered certain

evidence withdrawn on remand. We will address each issue in turn.

### A.      Weighing of the Medical Opinions

Consolidation's arguments largely concern whether ALJ Timlin committed errors

when she credited Dr. Green's medical opinion that Mr. Funka had legal and clinical

pneumoconiosis and rejected the contrary opinions of Dr. Tomashefski and Dr. Fino. An

"ALJ has broad discretion to determine the weight accorded each doctor's opinion."

*Balsavage v. Dir., Office of Workers' Comp. Programs*, 295 F.3d 390, 396 (3d Cir.

2002). "In reaching a decision, an ALJ should set out and discuss the pertinent medical

evidence presented." *Kertesz v. Crescent Hills Coal Co.*, 788 F.2d 158, 163 (3d Cir.

1986). "The ALJ is not bound to accept the opinion or theory of any medical expert, but

may weigh the medical evidence and draw its own inferences." *Id*. "Moreover, the ALJ

---

[3] To be eligible for benefits, a claimant must also show "that the miner's pneumoconiosis arose at least in part out of coal mine employment." 20 C.F.R. § 718.203(a). "If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment." 20 C.F.R. § 718.203(b). ALJ Timlin's finding that this presumption was applicable and unrebutted by Consolidation is not specifically challenged on appeal.

should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation." *Id.*

Initially, Consolidation contends that ALJ Timlin's decision is internally inconsistent because it both credits Dr. Oesterling's opinion that the autopsy evidence does not prove that Mr. Funka had pneumoconiosis and also credits Dr. Green's opinion that the autopsy evidence did reveal pneumoconiosis. This argument, however, misconstrues the ALJ's decision.

Under 20 C.F.R. § 718.202, an ALJ may find that a miner has pneumoconiosis on the strength of one of several categories of evidence, including a chest X-ray, a biopsy or autopsy, or a physician's "reasoned medical opinion" if such opinion is "based on objective medical evidence." 20 C.F.R. § 718.202(a)(1)-(4). Here, ALJ Timlin found that Dr. Holimon's diagnosis of clinical pneumoconiosis based upon his autopsy findings lacked credibility for a variety of reasons. The ALJ also found that Dr. Oesterling's opinion that the autopsy did not show pneumoconiosis was "well reasoned and well documented" based in part on Dr. Oesterling's finding that the autopsy showed "minimal anthracotic pigment" in Mr. Funka's lungs. (App. at 95.) Thus, the ALJ concluded that "Claimant failed to establish that Miner had pneumoconiosis by a preponderance of the autopsy evidence." (App. at 96.) When evaluating the medical opinions—a wholly separate category of evidence on which a finding of pneumoconiosis may be based under 20 C.F.R. § 718.202(a)—the ALJ credited Dr. Green's diagnosis of clinical and legal pneumoconiosis. In doing so, the ALJ found that Dr. Green provided a well-supported and reasoned explanation of why Mr. Funka "could have had an advanced form of

11

interstitial fibrosis despite a limited amount of black pigment in his lungs." (App. at 106.)

Contrary to Consolidation's argument, these findings are not contradictory or inconsistent. The ALJ found that the autopsy evidence alone was insufficient to establish that Mr. Funka had pneumoconiosis but that Dr. Green's medical opinion, which was based upon the autopsy evidence *and other medical evidence*, did establish that Mr. Funka had pneumoconiosis.

Similarly, Consolidation argues that the ALJ erred when she credited Dr. Green's diagnosis of coal dust-induced fibrosis based upon Dr. Green's finding that Mr. Funka had black pigment within his lungs. Consolidation argues that black pigment is not sufficient to base a diagnosis of coal workers' pneumoconiosis. Consolidation cites to 20 C.F.R § 718.202, which provides, in part, that "[a] finding in an autopsy or biopsy of anthracotic pigmentation . . . must not be considered sufficient, by itself, to establish the existence of pneumoconiosis." 20 C.F.R § 718.202(a)(2). This provision, however, relates to biopsy or autopsy evidence. As discussed above, ALJ Timlin concluded that Mr. Funka had legal and clinical pneumoconiosis based on medical opinion evidence, not on autopsy evidence. Further, as Consolidation admits, Dr. Green's diagnosis was based on the "presence of black pigment and birefringent particles, *as well as* the presence of macules and micronodules consistent with pneumoconiosis in areas less affected by the fibrosis." (Petitioner's Br. at 37) (emphasis added). Thus, Consolidation acknowledges that Dr. Green did not base his opinion solely on the presence of black pigmentation in

12

Mr. Funka's lungs, but instead considered the pigmentation in conjunction with other evidence.[4]

Next, Consolidation argues that the ALJ erred when she found that Mr. Funka had a pulmonary disability prior to 2003 based upon Mr. Funka's testimony about his shortness of breath in the 1990s. Pointing to 20 C.F.R. § 718.204(d)(3), Consolidation further contends that even if the ALJ was permitted to draw this inference from the lay evidence, it was improper for her to use this conclusion to credit Dr. Green's diagnosis.

Under 20 C.F.R. § 718.204,

> affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

20 C.F.R. § 718.204(d)(3). This regulation was violated, Consolidation argues, because Mr. Funka was a person eligible for benefits if his claim was approved and his testimony was used to establish his disability.

---

[4] Nor did the ALJ engage in inconsistent reasoning by discrediting the opinions of Dr. Tomashefski and Dr. Fino that Mr. Funka did not have coal workers' pneumoconiosis because those opinions were based on the absence of black pigmentation and macules or micronodules in Mr. Funka's lungs. As the ALJ correctly noted, the regulations do not require anthracotic pigment or pneumoconiotic macules or micronodules to support a pneumoconiosis finding. Thus, even if Mr. Funka did not have anthracotic pigment or pneumoconiotic macules or micronodules in his lungs, it would not necessarily follow that Mr. Funka did not have coal workers' pneumoconiosis. Therefore, the ALJ permissibly concluded that the opinions of Dr. Tomashefski and Dr. Fino were not well-reasoned.

13

Consolidation's argument once again misconstrues the ALJ's decision. ALJ Timlin did not establish that Mr. Funka was disabled based upon his lay testimony. Indeed, the ALJ did not even determine Mr. Funka's disability onset date based upon lay testimony. The ALJ specifically noted, "[t]he record does not disclose when Miner first became totally disabled due to pneumoconiosis." (App. at 111.) ALJ Timlin simply credited Dr. Green's medical opinion that Mr. Funka was disabled due to pneumoconiosis and then found that the doctor's opinion about the disease's progression was consistent with Mr. Funka's testimony about when he started experiencing symptoms. Section 718.204(d)(3) provides that a total disability cannot be *established* based solely on a claimant's testimony; it does not prohibit an ALJ from using lay testimony to determine when a claimant first became symptomatic. Thus, it was entirely permissible for the ALJ to evaluate whether Dr. Green's medical opinion was corroborated by Mr. Funka's lay testimony. *See Soubik v. Dir., Office of Workers' Comp. Programs*, 366 F.3d 226, 230, 238 (3d Cir. 2004).

Relying on *United States Steel Mining Company, Inc. v. Director, Office of Workers' Compensation Programs*, 187 F.3d 384 (4th Cir. 1999), Consolidation next argues that the ALJ erred in crediting Dr. Green's "highly speculative" opinion about the absence of black pigment in Mr. Funka's lungs. (Opening Br. at 41-43.) In *United States Steel,* the Fourth Circuit held that a doctor's statement that "it is *possible* that [the claimant's] death could have occurred as a consequence of his pneumonia superimposed upon . . . his occupational pneumoconiosis" was insufficient "to establish by a preponderance of the evidence that there was a causal link between [the claimant]'s

14

pneumoconiosis and his death." *United States Steel*, 187 F.3d at 390, 391 (second alteration in original). Consolidation argues that Dr. Green's opinion regarding the lack of significant amounts of black pigment in Mr. Funka's lungs is similarly speculative as he used uncertain words and phrases such as "can" and "could in part be due to." (Opening Br. at 41-43.)

This argument, however, relies on a selective reading of Dr. Green's report and deposition testimony and ignores Dr. Green's overall conclusions. Dr. Green explained that

> [t]he most likely diagnosis, in my opinion, is that this is the variant of simple coal worker's pneumoconiosis characterized by interstitial fibrosis (Green and Vallyathan, 1998). . . . [A]lthough some of the interstitial fibrosis was pigmented (as shown in Figures 5 and 6), a majority was not (Figure 1). The lack of pigmentation could in part be due to clearance of coal mine dust from the lungs following retirement from the mining industry in 1992, a period of 13 years. In addition, episodes of congestive cardiac failure can enhance clearance of a dust from the interstitium (Green and Vallyathan, 1998). Variability of pigmentation appears to be a feature of this form of coal worker's pneumoconiosis (Green and Vallyathan, 1998; McConnochie *et al.*, 1998).
>
> Silica exposure can also produce interstitial fibrosis (Craighead *et al*., 1982; Honma *et al*., 1993) and evidence of significant silica exposure was shown by the presence of large confluent silicotic nodules in the tracheo-bronchial lymph nodes. *Thus, it is my opinion that the interstitial fibrosis was causally related to coal mine dust exposure which included the silica component.*

(App. at 265-266) (emphasis added.) Unlike *United States Steel* where the doctor could not opine with any definiteness that the claimant's pneumoconiosis was related to his death, Dr. Green opined that Mr. Funka's interstitial fibrosis was caused by his exposure to coal dust and further diagnosed him with coal workers' pneumoconiosis. He supported his conclusions with citations to the medical literature, his own findings, and his

15

explanations of the evidence that appeared to contradict his diagnosis. The mere fact that Dr. Green used some less than definite language before coming to his ultimate conclusion does not mean that the ALJ was not entitled to credit his medical opinion and diagnosis. Indeed, "a testifying physician need not express his conclusions in terms of reasonable degree of medical certainty to be credited by the ALJ; the ALJ must instead accept a documented opinion of a physician exercising reasoned medical judgment." *Mancia v. Dir., Office of Workers' Comp. Programs*, 130 F.3d 579, 588 (3d Cir. 1997) (alteration and quotation marks omitted).[5]

Relatedly, we find no merit in Consolidation's contention that the ALJ impermissibly credited Dr. Green's interpretation of a particular research study, the McConnochie study, over the interpretations of Dr. Fino and Dr. Tomashefski, simply because Dr. Green was a co-author of the study. As the ALJ correctly pointed out, neither party placed the McConnochie study in the record. While the ALJ certainly could have directed either party to place the study into evidence, the ALJ permissibly credited Dr. Green's interpretation of the study over that of Dr. Fino and Dr. Tomashefski on the basis that Dr. Green co-authored the study and therefore had a more in-depth understanding of the study's conclusions and implications.

---

[5] Consolidation also argues that the ALJ improperly found legal pneumoconiosis in connection with Mr. Funka's bronchitis because Dr. Green only stated that Mr. Funka's bronchitis was "probably" related to his coal mine dust exposure. (App. at 395.) Such a finding, however, was not necessary to award benefits because the ALJ also concluded that Mr. Funka had both clinical and legal pneumoconiosis with respect to his pulmonary fibrosis. Thus, even assuming the ALJ did err in this respect, any such error was harmless.

16

Consolidation also puts forth a variety of arguments as to why the ALJ erred in assigning little weight to the medical opinions of Dr. Tomashefski and Dr. Fino. Having already concluded that the ALJ did not err in her analysis of Dr. Green's medical opinion and therefore permissibly assigned that opinion significant probative weight, we see no error in the comparative weight that the ALJ assigned to the opinions of Dr. Tomashefski and Dr. Fino. ALJ Timlin reviewed all the evidence in the record and explained that she assigned little probative weight to the opinion of Dr. Tomashefski because, among other reasons, (1) his conclusion that Mr. Funka did not have pneumoconiosis was based on the absence of pigmentation and macules or micronodules, the presence of which are not required to support a diagnosis of pneumoconiosis under the BLBA regulations, (2) he provided no explanation or citation to the medical literature to support his claim that coal mine dust induced fibrosis does not cause honeycombing, (3) his interpretation of the McConnochie study to support his conclusion was contradicted by the study's co-author, and (4) he failed to address the possibility that Mr. Funka could have legal pneumoconiosis. Further, the ALJ noted that Dr. Tomashefski's opinion that Mr. Funka had idiopathic pulmonary fibrosis was in conflict with Dr. Green's explanation, supported by citations to the medical literature, that such a diagnosis was inappropriate for individuals with a history of coal dust exposure. Despite this conflict, the ALJ explained that "Dr. Tomashefski did not discuss why Miner's fibrosis was idiopathic in light of Miner's coal dust exposure history." (App. at 108.)

These were all permissible considerations for ALJ Timlin to take into account when weighing the competing medical opinions. *See Kertesz*, 788 F.2d at 163 ("[T]he

17

ALJ should reject as insufficiently reasoned any medical opinion that reaches a conclusion contrary to objective clinical evidence without explanation."). The ALJ adequately explained why she assigned Dr. Tomashefski's opinion less weight and substantial evidence in the record supports the ALJ's findings.

Likewise, ALJ Timlin assigned little probative weight to Dr. Fino's opinion that Mr. Funka did not have pneumoconiosis because (1) Dr. Fino based his conclusion on findings of minimal to no anthracotic pigment and his assertion that coal mine induced fibrosis is usually associated with heavy anthracotic pigment within the fibrosis, a finding which is not required to support a diagnosis of pneumoconiosis under the BLBA regulations, (2) Dr. Fino's assertion that Mr. Funka's pulmonary fibrosis began in 2003 was contradicted by both Mr. Funka's testimony and medical reports from 2003 showing that Mr. Funka already had advanced pulmonary fibrosis at that time, and (3) Dr. Fino did not explain why his diagnosis of idiopathic pulmonary fibrosis was appropriate in light of Mr. Funka's history of significant coal dust exposure. Once again, the ALJ adequately explained why she rejected Dr. Fino's opinion as insufficiently reasoned and not well supported. In light of the facts discussed above, we find that substantial evidence in the record supports the ALJ's findings with respect to Dr. Fino's opinion.[6]

---

[6] Additionally, Consolidation argues that ALJ Timlin failed to address matters the BRB directed her to consider on remand. As Consolidation readily admits, however, it did not raise this argument before the BRB. Because Consolidation did not raise this argument before the BRB, we deem it waived. *See Penn Allegheny Coal Co. v. Mercatell*, 878 F.2d 106, 110 (3d Cir. 1989).

In sum, we find that ALJ Timlin did not err in her evaluation of the medical opinions and that her findings were supported by substantial evidence.

### B.    Withdrawing Evidence

Finally, Consolidation argues that ALJ Timlin abused her discretion and violated Consolidation's due process rights to a full and fair hearing when it ordered certain evidence withdrawn from the record.  Pursuant to 20 C.F.R. § 725.414, parties are limited in the amount of medical evidence they may submit in support of their cases.[7]  When this matter reached the BRB for the third time, Mrs. Funka argued that Consolidation exceeded the limitations found in § 725.414.  The BRB instructed that, on remand, the ALJ should determine whether Dr. Oesterling's report constituted rebuttal evidence, thus falling outside of the evidentiary limitations.  In response, ALJ Timlin ordered the parties to submit a summary which designated their evidence with respect to the § 725.414 limitations.  According to Consolidation, this had the effect of forcing Consolidation to withdraw evidence that it had relied on over the duration of the litigation.  Consolidation objected, but ALJ Timlin found that the "evidentiary limitations are mandatory and not

---

[7] For example, under the regulation,

> The claimant is entitled to submit, in support of his affirmative case, no more than two chest X-ray interpretations, the results of no more than two pulmonary function tests, the results of no more than two arterial blood gas studies, no more than one report of an autopsy, no more than one report of each biopsy, and no more than two medical reports.

20 C.F.R. § 725.414(a)(2)(i).

waivable" and that Consolidation failed to "show[ ] good cause for including evidence in excess of the evidentiary limitations." (App. at 81.) The BRB affirmed.

Consolidation argues that it was prejudiced by being forced to comply with the limitations contained in § 725.414. To be clear, Consolidation does not argue that § 725.414 is itself problematic. Instead, Consolidation contends that it litigated this matter over the course of many years and relied on the evidence that it submitted when fashioning its arguments. Thus, Consolidation argues that when the § 725.414 limitations were enforced at such a late stage, Consolidation's right to a full and fair hearing was violated.

We discern no error in the ALJ's enforcement of the § 725.414 evidentiary limitations under these facts. Although Consolidation argues that the ALJ *sua sponte* ordered evidence withdrawn, the record shows that Consolidation was afforded a full opportunity to decide what evidence it wished to submit in support of its case within the confines of the § 725.414 limitations. Further, although Consolidation makes generalized and conclusory allegations of prejudice, Consolidation fails to identify any specific argument that was foreclosed to it or any other specific prejudice it suffered as a result of ALJ Timlin's Order.

## IV. Conclusion

For the reasons discussed above, we will deny Consolidation Coal Company's Petition for Review.